UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| GLENN O.,[1]<br><br>Plaintiff,<br><br>vs.<br><br>DR. KILOLO KIJAKAZI, Acting Commissioner, Social Security Administration,<br><br>Defendant. | CIV. 20-5073-JLV<br><br>REDACTED ORDER |

**INTRODUCTION**

Plaintiff filed a complaint appealing the final decision of Dr. Kilolo Kijakazi,[2] Acting Commissioner of the Social Security Administration, finding him not disabled. (Docket 1). Defendant denies plaintiff is entitled to benefits. (Docket 13). For the reasons stated below, plaintiff's motion to reverse the

---

[1]The Administrative Office of the Judiciary suggested the court be more mindful of protecting from public access the private information in Social Security opinions and orders. For that reason, the Western Division of the District of South Dakota will use the first name and last initial of every non-governmental person mentioned in the opinion. This includes the names of non-governmental parties appearing in case captions.

[2]Dr. Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Fed. R. Civ. P. 25(d), Dr. Kijakazi is automatically substituted for Andrew Saul as the defendant in all pending social security cases. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g). Dr. Kijakazi will be referred to as the "Commissioner" for the remainder of this order.

decision of the Commissioner (Docket 21) is granted and defendant's motion to affirm the decision of the Commissioner (Docket 22) is denied.

## FACTUAL AND PROCEDURAL HISTORY

The court issued a briefing schedule requiring the parties to file a joint statement of material facts ("JSMF").  (Docket 15).  The parties filed their JSMF.  (Docket 16).  The parties' JSMF is incorporated by reference.  Further recitation of salient facts is incorporated in the discussion section of this order. On January 30, 2018, plaintiff filed an application for disability insurance ("DI") benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-33, alleging an onset of disability date of June 21, 2006.  Id. ¶ 1.  On April 13, 2020, an ALJ issued a decision finding plaintiff was not disabled and not entitled to benefits.  Id. ¶ 4; see also Docket 14-1 at pp. 17-30.[3]  On October 30, 2020, the Appeals Council denied plaintiff's request for review and affirmed the ALJ's decision.[4]  Id. ¶ 5.  The ALJ's April 13, 2020, decision constitutes the final decision of the Commissioner of the Social Security Administration.  It is from this decision which plaintiff timely appeals.

The issue before the court is whether the ALJ's decision that plaintiff was not "under a disability, as defined in the Social Security Act, at any time from June 21, 2006, the alleged onset date, through December 31,2020" is supported

---

[3]The court cites to the page of the document as filed in CM/ECF as opposed to the page of the administrative record.

[4]The JSMF mistakenly identified the date as October 30, 2018, but the administrative record correctly identifies the date of the Appeals Council decision as October 30, 2020.  See Docket 14-1 at p. 8.

by substantial evidence in the record as a whole.   (Docket 14-1 p. 29); see also Howard v. Massanari, 255 F.3d 577, 580 (8th Cir. 2001) ("By statute, the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.") (internal quotation marks and brackets omitted) (citing 42 U.S.C. § 405(g)).

## STANDARD OF REVIEW

The Commissioner's findings must be upheld if they are supported by substantial evidence in the record as a whole.   42 U.S.C. § 405(g); Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006); Howard, 255 F.3d at 580.   The court reviews the Commissioner's decision to determine if an error of law was committed.   Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992).   "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."   Cox v. Barnhart, 471 F.3d 902, 906 (8th Cir. 2006) (internal citation and quotation marks omitted).

The review of a decision to deny benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account whatever in the record fairly detracts from that decision."   Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)).

3

It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the Commissioner's decision if that decision is supported by good reason and is based on substantial evidence. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005). A reviewing court may not reverse the Commissioner's decision " 'merely because substantial evidence would have supported an opposite decision.' " Reed, 399 F.3d at 920 (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)). Issues of law are reviewed *de novo* with deference given to the Commissioner's construction of the Social Security Act. See Smith, 982 F.2d at 311.

The Social Security Administration established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to DI benefits under Title II. 20 CFR § 404.1520(a). The five-step sequential evaluation process is:

> (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment—one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform . . . past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform.

Baker v. Apfel, 159 F.3d 1140, 1143-44 (8th Cir. 1998). The ALJ applied the five-step sequential evaluation required by the Social Security Administration regulations. (Docket 14-1 at pp. 2-3).

**STEP ONE**

At step one, the ALJ determined plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date of June 21, 2006[,] through his date last insured of December 31, 2010." Id. at p. 3.

**STEP TWO**

At step two, the ALJ must decide whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe.  20 CFR § 404.1520(c).  A medically determinable impairment can only be established by an acceptable medical source.  20 CFR § 404.1513(a). Accepted medical sources include, among others, licensed physicians.  Id.

The ALJ identified plaintiff suffered from the following severe impairments: "cervical stenosis with myelopathy, status post decompression; and, chronic pain syndrome due to spinal cord injury."  (Docket 14-1 at p. 4).

**STEP THREE**

At step three, the ALJ determines whether claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 ("Appendix 1"). 20 CFR §§ 404.1520(d), 404.1525 and 404.1526.  If a claimant's impairment or combination of impairments meets or medically equals the criteria for one of the impairments listed and meets the duration requirement of 20 CFR § 404.1509, the claimant is considered disabled.  At that point the Commissioner "acknowledges [the impairment or combination of impairments] are so severe as

5

to preclude substantial gainful activity. . . . [and] the claimant is conclusively presumed to be disabled." Bowen v. Yuckert, 482 U.S. 137, 141 (1987). Plaintiff has the burden of proof that he meets Listing 1.04(A). Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004).

The ALJ determined plaintiff did not have an impairment or combination of impairments which met or were medically equal to one of the impairments listed in Appendix 1. (Docket 14-1 at p. 22). The ALJ considered plaintiff's

> degenerative disc disease and found that [plaintiff's] impairment does not meet the criteria of listing 1.04-*Disorders of the spine*. . . . The [plaintiff's] record does not contain objective evidence of nerve damage causing pain, accompanied by loss of motor and sensory function, nor does the . . . record show the [plaintiff] is unable to ambulate without the use of 2 canes, crutches or a walker . . . .

Id. (italics in original). Plaintiff challenges this ruling. (Docket 21 at pp. 2-14).

Listing 1.04 of Appendix 1 provides:

Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

> A. Evidence of nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

Appendix 1, Listing 1.04(A).

In this case, the parties agree plaintiff must suffer from a spine disorder resulting in the compromise of a nerve root or the spinal cord and show evidence of nerve root compression. (Dockets 21 at p. 3 and 23 at p. 4). They also agree evidence of nerve root compression is characterized by (1) neuroanatomic distribution of pain; (2) limitation of motion of the spine; and (3) motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss.[5] (Dockets 21 at p. 3 and 23 at p. 4).

It is undisputed plaintiff suffered severe impairments of "cervical stenosis with myelopathy" and "chronic pain syndrome due to spinal cord injury." (Docket 14-1 at p. 20). "Spinal stenosis is narrowing of the spinal column that causes pressure on the spinal cord, or narrowing of the openings . . . where spinal nerves leave the spinal column." Cumella v. Colvin, 936 F. Supp. 2d 1120, 1135 n.46 (D.S.D. 2013) (citing http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001477). "When any portion of the spinal cord becomes compressed or constricted, the resulting symptoms are known as myelopathy." https://www.Hopkinsmedicine.org/health/conditions-and-diseases/myelopathy (last visited April 13, 2022). "Nerve root compression results in a specific neuro-anatomic distribution of symptoms and signs depending upon the nerve root(s) compromised." Appendix 1 at 1.00(K)(1). "Neuroanatomic distribution of pain entails pain radiating to the extremities." Chaplin v. Colvin,

---

[5]The ALJ's reference to "nor does the . . . record show the [plaintiff] is unable to ambulate without the use of 2 canes, crutches or a walker" was simply a reference to the entirety of Listing 1.04A. (Docket 14-1 at p. 22). This provision applies only to injuries of the lumbar spine and the Commissioner makes no argument plaintiff fails to qualify for Listing 1.04A based on this provision. See Docket 23.

No. 14-CV-935, 2016 WL 1715439, at *4 n.9 (N.D. Tex. 2016) (internal quotation marks and citation omitted). The parties disagree how an ALJ is to determine when nerve root compression exists.

Plaintiff argues the ALJ erred by finding no objective evidence of nerve root compression. (Docket 21 at p. 5) (referencing Docket 14-1 at p. 22) ("the . . . record does not contain objective evidence of the nerve damage causing pain, accompanied by loss of motor and sensory function . . . ."). Plaintiff's argument identifies the medical record "evidence of neuroanatomic distribution of pain." Id. at p. 6 (capitalization omitted). Plaintiff's brief also points out the medical record "evidence of motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." Id. at p. 10 (capitalization omitted). The entries highlighted in plaintiff's brief under these two categories need not be restated here but are referenced for further analysis of the issues before the court. See id. at pp. 7-13. Plaintiff asserts these references to the medical record constitute objective evidence "that he did have the required findings of 'neuroanatomic distribution of pain' as well as motor and sensory loss." Id. at p. 14.

The Commissioner argues plaintiff "has not cited any objective evidence showing nerve root compression." (Docket 23 at p. 4). The Commissioner contends "Listing 1.04A states . . . [a] nerve root compression must be *characterized* by neuro-anatomic distribution of pain, motor loss, and sensory or reflex loss, not that these symptoms are sufficient to *establish* nerve root compression as Plaintiff appears to argue." Id. (emphasis in original;

8

referencing Listing 1.04A).   After focusing on two medical entries, the Commissioner contends "the ALJ noted, despite some residual spurring and myelomalacia, treatment successfully resolved Plaintiff's stenosis."  Id. at pp. 4-5 (referencing (Docket 16 ¶¶ 19 & 23).   Even if plaintiff can satisfy the nerve root compression requirement, the Commissioner submits plaintiff "did not have motor loss for 12 consecutive months" so he cannot meet the requirements of Listing 1.04A.  Id. at p. 5.

In reply, plaintiff asserts the Commissioner's "argument is without merit," as plaintiff's charts show "there are 28 separate references to [his] neuropathic pain complaints."   (Docket 28 at p. 2) (emphasis omitted).   Summarizing Dr. C.'s treatment records and opinions, plaintiff offers the following:

> [S]pinal cord injuries, especially those that are incomplete, can be extremely painful.  Id. (referencing Docket 16 ¶ 80);
>
> Plaintiff's pain is described as "chronic pain syndrome secondary to spinal cord injury."  Id. (referencing Docket 16 ¶ 91); and
>
> [S]pinal cord injuries are significantly painful, especially at the level of injury, they'll have a burning, stabbing, shooting pain that just comes and goes intermittently, sometimes with provocation, sometimes just without any good reason.  Id. (referencing Docket 16 ¶ 91).

Plaintiff believes Dr. C. "identified multiple pieces of 'objective evidence' supporting her opinion that [he] suffered from neuropathic pain due to his spinal cord injury. . . . [And] also documented diminished range of motion."  Id. at p. 3.

Addressing the Commissioner's 12-consecutive-months argument, plaintiff asserts the charts in his opening brief highlight "five references to motor

9

loss in 2006, seven references in 2007, seven references in 2008, three references in 2009, and five references in 2010." Id. at p. 4 (referencing Docket 21 at pp. 10-13). Plaintiff contends the records highlighted establish "evidence of motor loss for over four years." Id.

It is clear by the directives of Sullivan v. Zebley, 493 U.S. 521, 530 (1990), and Johnson, supra, that an ALJ must consider only medical evidence to evaluate whether an impairment qualifies within a listing of Appendix 1. The ALJ was required to look further in the timeline of the record to determine if the duration requirement for Listing 1.04A was satisfied.

The ALJ's finding plaintiff did not have the required compromise of a nerve root is factually and legally incorrect. Interpreting an April 2007 MRI, plaintiff's neurosurgeon charted the MRI showed "areas of obvious myomalacia with continued flattening of the [spinal] cord." (Docket 16 ¶ 34) (emphasis added). Plaintiff's physiatrist used subacromial injections and Oxycontin with little to no success to relieve the pain caused by the compressed cord system. Id. ¶¶ 39-41 & 43. From January 2008 through October 2010, plaintiff's rehabilitation medicine specialist treated him and repeatedly diagnosed the condition as "chronic pain syndrome *secondary to spinal cord injury*." See id. ¶¶ 75, 76, 84 & 91 (emphasis added). Plaintiff's medical records constitute objective evidence establishing he suffered from nerve root compression with corresponding "neuroanatomic distribution of pain, limitation of motion of the spine, motor loss . . . accompanied by sensory or reflex loss." Listing 1.04A; see also Docket 21 at pp. 7-13.

There is no question a physical impairment considered under Listing 1.04 must be in existence for a continuous period of at least 12 months. 20 CFR § 404.1509 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement.").

The Commissioner's argument on this issue is disingenuous. Plaintiff's medical records clearly satisfy the duration requirement for an impairment lasting at least 12 continuous months for inclusion in Listing 1.04A. See Docket 21 at pp. 7-13.

In conclusion, at step three, the ALJ erred in fact and as a matter of law. Smith, 982 F.2d at 311; Zebley, 493 U.S. at 532; and Johnson, 390 F.3d at 1070. The court finds plaintiff qualified at step three because his impairments, spinal cord injury and nerve compression met the criteria of Listing 1.04(A) of Appendix 1. As a result of the error at step three, the court need not address plaintiff's remaining challenges to the ALJ's decision.

"The reason for [the] difference between the listings' level of severity and the statutory standard is that . . . the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." Zebley, 493 U.S. at 532. "If the claimant has an impairment that meets the medical criteria of a listed impairment, the claimant is presumptively disabled, and no further inquiry is necessary." Shontos v. Barnhart, 328 F.3d 418, 424 (8th Cir. 2003). See also Myers v. Colvin, 721 F.3d 521, 525 (8th Cir. 2013) ("If medical

11

equivalence [of a listed impairment] is established, the claimant will be found disabled."). Plaintiff is disabled and entitled to benefits. 20 CFR § 404.1520(d). Reversal is the appropriate remedy at this juncture.

## ORDER

In accord with the above decision, it is

ORDERED that plaintiff's motion (Docket 21) is granted and the Commissioner's motion (Docket 22) is denied.

IT IS FURTHER ORDERED that the decision of the Commissioner of April 13, 2020, is reversed and the case is remanded to the Commissioner for the purpose of calculating and awarding benefits to the plaintiff.

Dated July 26, 2022.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE